# BORRELLI & ASSOCIATES
## P.L.L.C.

www.employmentlawyernewyork.com

| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

November 14, 2018

*Via Electronic Case Filing*
The Honorably Robert M. Levy
United States Magistrate Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  *Cabrera v. Carpetorium, Inc., et al.*, Case. No. 17-cv-437-SJ-RML

Dear Judge Levy:

  As the Court knows, this office represents the Plaintiff, Luis Cabrera ("Plaintiff"), in the above-referenced single-plaintiff wage and hour matter against his former employers, Carpetorium, Inc. and its owner Hamid Elayni, (together as "Defendants"), (Defendants, together with Plaintiff, as "the Parties"), for Defendants' alleged violations of, *inter alia*, the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). On December 28, 2017, the Parties attended a private mediation with a member of this District's mediation panel, Michael Levy, Esq., during which they were unable to resolve this action. Since that time, the Parties exchanged extensive financial documents and other records, and were, *finally*, able to reach a settlement in principle on September 25, 2018. The Parties have now reduced their settlement agreement ("Agreement") to writing, which is attached hereto as **Exhibit A**.[1] We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiff's FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[2]

---

[1] Plaintiff's executed Agreement is attached hereto. Defendants will submit their executed agreement upon receipt within the next few business days.

[2] Plaintiff also brings claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal under *Cheeks*. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF # 32 at 2 n.1 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36

I.      **Procedural History and Settlement Agreement Terms**

On January 26, 2017, Plaintiff filed his Summons and Complaint on behalf of himself and all others similarly situated, as well as his consent-to-sue form, thereby opting-in to this action. ECF #s 1, 1-2, 2.  Plaintiff alleges that he worked for Defendants - - a flooring installation company and its owner and day-to-day manager - - as a laborer from February 2008 until February 2016. Plaintiff alleges that despite working over forty hours virtually every week of his employment, Defendants failed to pay him one and one-half his regular rate of pay for all hours over forty. Instead, Plaintiff alleges that Defendants paid him a flat daily wage, which fell below the statutory minimum wage rate, and which also failed to compensate him for his overtime hours.  Specifically, Plaintiff claims that he worked six days per week, between ten and fourteen hours per day, for an average of seventy-two hours per week.  Plaintiff alleges that Defendants never paid him any overtime compensation despite his working more than thirty hours over forty each week, instead paying him $100.00 per day, regardless of the number of hours he worked, which also resulted in Defendants paying him below the FLSA's minimum wage rate on those days where he worked fourteen hours.

Defendants answered the Complaint on April 3, 2017, ECF # 13, denying in sum and substance all of Plaintiff's material allegations, while also bringing counterclaims against Plaintiff for alleged Breach of Duty of Loyalty, Unjust Enrichment, and Tortious Interference with Business Relationship.  The following week, on April 11, 2017, Plaintiff amended his complaint to add retaliation claims based on Defendants' retaliatory counterclaims filed in response to Plaintiff's complaint. ECF # 14.  Defendants answered Plaintiff's amended complaint on February 27, 2018, ECF # 17, again asserting the same counterclaims.  Plaintiff then moved to dismiss Defendants' counterclaims on May 16, 2017 (ECF # 19 *et seq.*), which prompted Defendants to amend their counterclaims by supplementing their allegations of fact supporting their Breach of Duty of Loyalty and Unjust Enrichment claims, while withdrawing their Tortious Interference with Business Relationship claim. ECF # 21.  Defendants' re-pleaded counterclaims alleged that Plaintiff stole business and materials from Defendants in an effort to undercut Defendants' prices by offering the same services to Defendants' customers at cut rates.  On June 15, 2017, Plaintiff answered Defendants' amended counterclaims, denying all of Defendants' material allegations. ECF # 22.

With all operative pleadings filed, the Parties exchanged discovery requests and responses, including hundreds of pages of receipts and financial documents evidencing the volume of Defendants' business.  Plaintiff also conducted a non-party deposition of an alleged witness who Defendants claimed supported their counterclaims.  Following that deposition, the Parties agreed

---

(E.D.N.Y. Feb. 23, 2018) (noting that courts "have regularly approved of the practice whereby parties submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement.").

to mediate this case, and the Court entered a mediation referral order on November 1, 2017. The Parties then conducted an all-day mediation on December 28, 2017, at the offices of mediator Michael Levy, Esq., a member of this District's mediation panel. At the mediation, the Parties exchanged offers and demands, making substantial progress but ultimately adjourning the session to allow Defendants to produce additional financial records in support of what became their claimed inability to pay a substantial settlement. Over the course of the next several months - - which was, in part, delayed due to two separate attorneys departing Defendants' counsel's law firm, and in part due to Defendant Elayni's poor health and multiple hospitalizations - - the Parties exchanged additional documents reflecting Defendants' financial condition. Based on this exchange, Plaintiff agreed to forego seeking conditional certification of a potential FLSA collective in this matter, and the Parties continued negotiating until they ultimately agreed to mutually resolve this action for the amount of $100,000.00 (hereinafter the "Settlement Sum").[3]

The Settlement Sum will be distributed as follows:

- Plaintiff. The net amount of $65,068.97 (after deduction of attorneys' fees and litigation expenses);

    *and*

- Borrelli & Associates, P.L.LC. $34,931.03 for their attorneys' fees and costs, comprising $2,396.55 as out-of-pocket litigation expenses and $32,534.48, or 1/3rd of the *net* Settlement Sum (i.e., after reduction of litigation expenses *before* calculating the 1/3rd sum) as attorneys' fees.

Due to Defendants' financial condition, the Settlement Sum will be paid out over the course of sixty-one calendar months, with an initial up-front payment of $30,000.00 upon Court approval, and the remaining payments paid out in equal monthly installments thereafter.

As described in detail below, Plaintiff, on behalf of all Parties, respectfully submits that this amount and allocation is fair and reasonable under the circumstances for the reasons detailed below.

## II. The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted).

---

[3] The Parties consented to Your Honor's jurisdiction for all purposes in this matter on October 19, 2018. ECF # 40.

3

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. The Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable based on the *Wolinsky* factors.

### A.   *Range of Possible Recovery*

Here, as this Court knows, Plaintiff alleges that he worked for the Defendants as a laborer from February 2008 through February 2016. The maximum statute of limitations under the FLSA is three years, 29 U.S.C. § 255(a), making the relevant period for purposes of Plaintiff's FLSA claims from January 26, 2014 to the end of Plaintiff's employment. Again, Plaintiff's principal FLSA claims are that Defendants failed to pay him minimum wage and overtime compensation for all of his overtime hours, and instead paid him a flat rate below the minimum wage for all hours worked. Defendants strenuously opposed the scope and breadth of Plaintiff's claims in this matter. Defendants first argued that Plaintiff did not work more than forty hours during any week, and that there were several months at a time where Plaintiff in fact did not work at all due to either Plaintiff's own out-of-country travel, or Defendants' summertime and holiday business closures. Defendants also argued that the flat daily wage that they paid to Plaintiff - - $100.00 per day - - amounted to far more than the minimum wage because, in Defendants' view, Plaintiff never worked more than eight hours per day. Further, Defendants argued in favor of their counterclaims that Plaintiff was in fact a "faithless servant" under New York law based on their allegations that Plaintiff stole materials and business from Defendants. If true, this might entitle Defendants to damages in the amount of any diverted business / lost profits, plus disgorgement of all wages paid to Plaintiff during any allegedly faithless employment. In support of their counterclaims, Defendants presented testimony from other employees, neighborhood residents, and customers, all alleging that Plaintiff had offered his services at rates below Defendants' prices. As a result, according to Defendants, this may ultimately reduce Plaintiff's damages to a tiny fraction of that originally claimed, if anything, while also contending that they at all times acted in good faith because they never in fact violated the law. And finally, even if Plaintiff were able to prevail on his claims, Defendants claimed that their business volume has decreased substantially over the last several years, making their inability to withstand a large judgment almost assured, and requiring any settlement to be paid out over a lengthy time period.

4

Were the trier of fact to credit all of Plaintiff's allegations, Plaintiff's maximum recovery for his FLSA wage claims would be an estimated $29,914.57 for owed minimum wages and overtime, plus liquidated damages in an equal amount. Of course, if Defendants successfully prevailed on their defenses, Plaintiff could be entitled to zero, or possibly a small fraction of his overtime damages listed above given what Defendants alleged to Plaintiff's time away from work while traveling in addition to Defendants' own store closures. And worse, if Defendants prevailed on their faithless servant counterclaim, Plaintiff could face a judgment in excess of $100,000.00 (i.e., the approximate amount of money he received in wages over the course of the relevant six-year time period).[4] Thus, a realistic range of recovery for Plaintiff's FLSA wage claims in this matter was between $59,829.14 and zero (or, in reality, a negative number potentially in the six-figure range).[5] Based on his distribution under the Parties' Agreement, after deduction of attorneys' fees and costs, Plaintiff is receiving $65,068.97, representing approximately 108% of his best-case-scenario recovery for his wage-related claims under the FLSA. On balance, considering the extensive disputed issues of fact with respect to Plaintiff's alleged hours, Defendants' alleged business operation, and the threat of Defendants' counterclaims, the outcome here is highly reasonable.

### B. *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, litigation expenses were prepared to substantially increase, as additional party and non-party depositions were necessary as discovery continued. The heavily disputed issues of fact would lead to likely dispositive motion practice by both Parties, and a strong likelihood of a need for trial on the merits for most of the claims and defenses - - including Defendants' counterclaims - - in this case.

At bottom, even if successful at both the summary judgment and trial stages, Plaintiff faced a difficult challenge in recovering a greater judgment than the Settlement Sum, given the substantial relief received here. This is particularly true in light of the financial health of Defendants' business, as evidenced by financial records Plaintiff's counsel reviewed over the course of the Parties' settlement negotiations. Plaintiff understands that if he were to continue with the litigation - - even if successful - - he may never receive more money than what Defendants are now offering. Indeed, courts have recognized that discovery, continued litigation, and eventual

---

[4] Under New York law, a faithless servant claim is subject to either a three- or six-year statute of limitations. *See Levy v. Young Adult Institute, Inc.*, 103 F. Supp. 3d 426, 434 (S.D.N.Y. 2015).

[5] Plaintiff's range of recovery for his retaliation claims are based on his emotional damages, and any potential punitive damages that a jury may award. *See Azkour v. Little Rest Twelve*, 2015 WL 631377, at *9-10 (S.D.N.Y. Feb. 12, 2015); *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 303-05 (E.D.N.Y. Apr. 5, 2013).

trial practice may "meaningfully decrease possible recovery for Plaintiff." *Flores v. Mama Lombardi's of Holdbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation expenses set to imminently rise for all Parties, the Settlement Sum is especially fair and reasonable.

### C. *Arm's-Length Bargaining, No Fraud or Collusion, No* Cheeks *Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over nearly a full year and concluded only after substantial paper discovery was exchanged and one non-party deposition took place, after the Parties participated in an all-day mediation, and exchanged and reviewed extensive financial documents. Indeed, the presence of a court-appointed mediator "provides assurance that the settlement was not the product of collusion." *Bilbao v. LCS Enters. Inc.*, 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); *see also Hernandez v. Anjost Corp.*, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618-19 (S.D.N.Y. 2012) (citing *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 159–60 (S.D.N.Y.2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). There was thus no fraud or collusion here.

Regarding the release, the Parties here note that courts generally do not permit releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206). However, this general rule is tempered where - - as here - - the general release is "mutual in all respects so as to enable the parties to walk[] away from their relationship . . . without the potential for any further disputes." *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-7 (S.D.N.Y. Nov. 6, 2015); *see also, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP,*, 206 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (citing *Souza* and permitting general mutual release). Here, the release in the Parties' Agreement is general and mutual given Defendants' counterclaims, fully supporting the fairness of the release and enabling the Parties to put their disputes behind them. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks,* 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks,* 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision). While the Parties' settlement agreement here does contain a mutual non-disparagement clause, the provision here is consistent with what courts typically approve because it is both a mutual provision, and because it specifically includes a carve-out to allow the Parties to make truthful statements about

6

the allegations underlying their claims and defenses in this case. *See Zhi Li Zhong v. Rockledge Bus Tour, Inc.*, 2018 WL 3733951, at *3 (S.D.N.Y. Aug. 6, 2018) (quoting *Lopez*, 96 F. Supp. 3d at 180 n.65) (approving FLSA settlement containing non-disparagement clause and finding "so long as non-disparagement clauses contain 'a carve-out for truthful statements about plaintiffs' experience litigating their case,' they may be fair and reasonable.").

Further strengthening the fairness of this agreement, as described above, are non-economic terms that protect Plaintiff. That is, Defendants are paying the Settlement Sum over the course of sixty-one months. Given the lengthy payment term, should Defendants at any time fail to timely make payment, Plaintiff's counsel will notify Defendants' counsel of the breach, and afford the Defendants a period of ten business days to cure said breach. Should Defendants fail to timely cure any such breach, 300% of the remaining unpaid Settlement Amount will immediately become due and owing, and Plaintiff will petition this Court for an order entering judgment for this amount, plus Plaintiff's counsel's reasonable fees and costs to obtain any such relief. To that end, the agreement provides that this Court will retain jurisdiction to permit prompt enforcement of the agreement and the entry of judgment against a breaching defendant if necessary. These non-economic terms further bolster the reasonableness of the outcome obtained, as they help to ensure the Plaintiff will receive the benefit of the bargain while deterring any default during the lengthy repayment period necessitated by Defendants' financial condition.

### D. *The Requested Attorneys' Fees and Costs are Reasonable.*

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $32,534.48, limited to one-third of the total net settlement amount, calculated after deducting for expenses. Plaintiff's counsel's request that the Court approve fees of one-third of the total net settlement is "consistent with the trend in this Circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); *Ezpino*, 2017 WL 3037483, at *3 (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)) ("'A one-third contingency fee is a commonly accepted fee in this Circuit.'"); *Kochilas*, 2015 WL 5821631, at *8 (collecting cases). Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See Ezpino*, 2017 WL 3037483, at *3 (approving request for fees at a "contingent rate of one-third"); *see also Cregg v. Firstservice*

7

*Residential N.Y., Inc.,* Docket No. 15-cv-3876-LB, D.E. 14, at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); *Calle*, 2014 WL 6621081, at *3 ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Additionally, the reasonableness of Plaintiff's counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *Guaman v. AJNA-BAR NYC*, 2013 WL 445896, at *8 (S.D.N.Y. Feb. 5, 2013) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of November 8, 2018, Plaintiff's counsel have billed over 175 hours on this matter - - an adversarial case involving the following: our motion to dismiss Defendants' original counterclaims; the parties amending their pleadings multiple times; substantial discovery including a non-party deposition; mediation-focused additional discovery that included the exchange and analysis of hundreds of pages of documents and financial records; meticulously calculated Plaintiff's estimated damages on a week-by-week basis based upon these documents; had extensive correspondence and discussions between and among the Parties on a multitude of issues; prepared pre-mediation *ex parte* submissions; participated in an all-day private mediation; conducted additional post-mediation financial analysis regarding Defendants' business operations; and prepared and finalized the Parties' written settlement agreement and this letter motion. This amounts to $40,183.00 in fees if calculated pursuant to the lodestar (as of the time of this drafting), an amount representing approximately 20% more than the $32,534.48 contingency fee that counsel seeks.

Plaintiff's counsel's lodestar figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $275.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and lead associate on this matter; $150.00 per hour for non-appearing junior associates who assisted undersigned counsel on this matter; and $125.00 per hour for law clerks and paralegals. Courts routinely approve these rates. *See Jones v. Strategic Financial Solutions, LLC*, Docket No. 1:16-cv-4517 (SN), D.E. 92 (S.D.N.Y. June 12, 2018); *Copper v. Cavalry Staffing, LLC*, Docket No.: 1:14-cv-3676 (FB) (RLM), D.E. 255 (E.D.N.Y. Feb. 12, 2018); *Vivaldo v. United Talmudical Academy of Kiryas Joel,*

8

*Inc.*, Docket No.: 1:14-cv-2636 (GWG), D.E. 128 (S.D.N.Y. Feb. 9, 2018); *Rodriguez ex rel. Simono v. Gemco Realty II, LLC*, Docket No.: 1:15-cv-5385 (AJN), D.E. 38 (S.D.N.Y. Nov. 21, 2017); *Ata v. St. George Treats, Inc.*, Docket No.: 1:16-cv-0563 (LB), D.E. 40 (E.D.N.Y. Sept. 12, 2017); *Aguilar v. Trolio Landscaping, Inc.*, Docket No.: 16-cv-02230 (CS), D.E. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, and $100.00 per hour for the Firm's paralegals); *Santos v. Yellowstone Properties, Inc.*, 2016 WL 2757427, at *4 (PAE) (S.D.N.Y. May 10, 2016) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman after becoming a partner and $325.00 per hour for him prior to becoming a partner, rates ranging from $200.00 to $300.00 for the Firm's associates, and between $75.00 per hour and $90.00 per hour for the Firm's paralegals); *Rosario v. Valentine Ave. Discount Store. Co.*, No. 10-cv-5255 (ERK)(LB) (E.D.N.Y. Mar. 3, 2016) (same); *Castillo v. RV Transport, Inc.*, No. 15-cv-527 (LGS)(JCF) (S.D.N.Y. Dec. 21, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman prior to him becoming a partner, $250.00 per hour for one of the Firm's senior associates, and $100.00 per hour for the Firm's paralegals); *Cregg v. FirstService Residential New York, Inc.*, No. 15-cv-3876 (LB) (E.D.N.Y. Dec. 9, 2015) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for Firm's associates, and $75.00 per hour for the Firm's paralegals); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at *2 (S.D.N.Y. Apr. 30, 2015) (Freeman, *J.*) (approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the Firm's associates, and $75.00 per hour for the Firm's paralegals).

Again, the fees requested represent a more than 20% lodestar reduction in this case, which - - considering that this is a reduction, not a multiplier - - falls well within what courts routinely approve as reasonable. *See, e.g., Lizondro-Garcia v. Kefi LLC*, 2015 WL 4006896, at *1-5 (S.D.N.Y. July 1, 2015) (approving 1.68 lodestar multiplier); *Cuthbert v. New Soldier's Rest., Inc.*, 2015 WL 1321676, at *2 (E.D.N.Y. Mar. 24, 2015) (approving 2.5 lodestar multiplier in default judgment fee award); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19-20 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *see also Wolinsky*, 900 F. Supp. 2d at 336 (explaining that a court may adjust the fee upward or downward from the lodestar amount based on other considerations); *In re Giant Interactive Grp. Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (quoting *City of Detroit v. Grinnell Corp*, 495 F.2d 448, 470 (2d Cir. 1974)) ("The most salient is the attorneys' risk in accepting a case on contingency fee, for the Second Circuit has noted 'no one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'").[6]

---

[6] Given the substantial reduction on Plaintiff's counsel lodestar, Plaintiff's counsel's billing records are not attached. Should the Court require submission of counsel's contemporaneous time records for consideration when deciding this motion, Plaintiff will gladly submit them.

Finally, with respect to costs, Plaintiff's counsel has incurred $2,396.55 in out-of-pocket expenses prosecuting this case, comprising the Court's filing fee, service of process, postage and copying, PACER fees, legal research fees, deposition costs, and mediation expenses. Plaintiff's counsel's itemized expense report is attached here as **Exhibit B**.

Accordingly, Plaintiff's counsel's request for a total of $34,931.03 as compensation for their work and expenses in this matter is entirely reasonable.

### III.     Conclusion

For the forgoing reasons, Plaintiff, on behalf of the Parties, respectfully requests that the Court approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and as described herein, dismiss this matter with prejudice, but retain jurisdiction to enforce the terms of the Parties' Agreement.

The Parties have attached a proposed order of dismissal as an exhibit to the Parties' Agreement for the Court to review and enter. We thank the Court for its time and consideration of this matter.

Respectfully submitted,

_____
Michael R. Minkoff, Esq.
*For the Firm*

To: All Counsel via ECF